UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>LENIN MOREL,<br><br>Defendant. | 11 Cr. 1032-54 (PAE)<br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

This order resolves a motion by defendant Lenin Morel to authorize a subpoena to the New York City Police Department ("NYPD") for records concerning an aspect of Morel's criminal history. Dkt. 2713–14. For the reasons that follow, the Court denies the motion.

I. **Relevant Background**

A. **Offense Conduct, Plea, and Sentencing**

The background to this case is set out in detail in, *inter alia*, the presentence report, Dkt. 2689 ("PSR"), the transcript of Morel's sentencing, Dkt. 1572 ("Sent. Tr."), and the Government's memorandum in opposition to the present motion, Dkt. 2736 ("G. Mem.").

In brief, Morel was a member of the Bronx Trinitarios Gang (the "BTG"). Between in or about 2003 and in or about December 2011, the BTG committed numerous murders and other acts of violence, engaged in firearms and drug trafficking, and terrorized the northwest Bronx. *See, e.g.*, Sent. Tr. at 44–46. On May 13, 2014, Morel pled guilty to Count One of Indictment S5 11 Cr. 1032 (PAE), charging him with participating in a racketeering enterprise, in violation of 18 U.S.C. § 1962(c). The conduct underlying that charge included participating with the BTG in various violent activities. *See* Sent. Tr. at 3. These included personally committing a murder (by

shooting BTG rival Miguel Perez in the head), shooting and attempting to murder members of rival gangs, and narcotics trafficking. *See id.* at 3, 18.

Sentencing was held November 14, 2014. The Court, in agreement with the parties, accepted the PSR's Guidelines calculation, finding an offense level of 36, a criminal history category of II, and an advisory Guidelines range of between 210 and 262 months' imprisonment. *Id.* at 15. The Court imposed a sentence at the top of the Guidelines range. *Id.* at 47, 56.

Explaining the sentence, the Court noted that Morel had engaged in "an extraordinary amount of brutal and senseless violence"; that he had been undeterred by prior arrests and guilty pleas arising from violent conduct; and that he was "very, very fortunate to have struck the plea agreement that [he] did," because the Perez murder alone would have qualified as a murder in aid of racketeering, carrying a mandatory life sentence. *Id* at 44–46; *see also id.* at 46 (commending counsel for reaching a plea agreement that gave the Court discretion as to zero to life imprisonment). The Court emphatically rejected the defense's request for a below-Guidelines sentence. It explained that the 18 U.S.C. § 3553(a) factors pointed towards a "very, very high sentence" and arguably justified an above-Guidelines sentence. *Id.* at 47. As to the § 3553(a) factors of just punishment and promotion of respect for the law, Morel had taken Perez's life purely because he viewed Perez as a rival of the BTG and two other times had shot other rivals of the gang, one in the back and one in the leg. *Id.* at 47–49. Morel also sold cocaine for the gang. *Id.* at 47–48. A very high sentence also was necessary to achieve specific (and general) deterrence and to protect the public. *Id.* at 50–52. As to mitigating factors, the Court credited Morel with accepting responsibility, as reflected in his guilty plea; noted Morel's youth; recognized challenges Morel had faced growing up; and noted letters from family positively describing his character. *Id.* at 52–55. Without these mitigating factors, the Court

stated, it would have imposed a sentence above, and "likely well above," the Guidelines range. *Id.* at 52.

After sentencing, the Court received a letter from Morel, asking the Court to credit, as against the sentence imposed, a term of imprisonment Morel had served in New York State custody following a 2012 conviction for assault, for which he was sentenced to two years' imprisonment. Dkt. 1409 (attaching letter). In an order filed December 1, 2014, the Court denied the request. *Id.* It noted that defense counsel had made the same request at sentencing, and that the Court had denied it, as it had factored that time served in determining the appropriate sentence under § 3553(a). *Id.* The Court reiterated why a sentence of 262 months, independent of the time Morel had served on the assault offense, was necessary. *Id.*

### B. Morel's Petition Under 28 U.S.C. § 2255

On December 19, 2023, the Probation Office issued a supplemental PSR. It found Morel eligible to pursue a reduction of sentence under Sentencing Guidelines Amendment 821. Dkt. 2689 at 3. It explained that Morel had received a 2-point criminal history enhancement for committing his offense while under a criminal justice sentence; eliminating those "status points" pursuant to Amendment 821 would leave Morel with one criminal history point and in Criminal History Category I, with an advisory Guidelines range of 188 to 235 months' imprisonment. *Id.* at 3–4, 33.

On February 28, 2024, apprised of the untimely death of trial counsel Guy Oksenhendler, Esq., the Court appointed Richard Palma, Esq., to represent Morel in seeking a sentence reduction under Amendment 821. Dkt. 2701.

On April 5, 2024, Mr. Palma filed a letter saying he had concluded that Mr. Oksenhendler likely rendered ineffective assistance to Morel in acceding to the Probation Office's assessment of criminal history points for a September 12, 2009 robbery offense in which Morel, with two

3

co-conspirators, punched another person in the head. Dkt. 2710 at 3. Noting that Morel was a member of the BTG at the time, Mr. Palma asserted that the incident was likely BTG-related, and if so, would qualify as relevant conduct, and be subsumed in the offense of conviction, racketeering, eliminating one criminal history point. *Id.* at 3–4. The 2009 conviction, Mr. Palma noted, was also the basis for imposing the status point adjustment implicated by Amendment 821. *Id.* at 5–6. Mr. Palma also argued that a § 2255 petition claiming ineffective assistance of counsel was not precluded by Morel's plea agreement, *id.* at 6–7, and that the Court should find the one-year limitations period for § 2255 relief equitably tolled, *id.* at 8–9.

On May 7, 2024, Mr. Palma moved for an order, under Federal Rule of Criminal Procedure 17(c) or the Court's inherent authority, authorizing Morel to subpoena the NYPD for Morel's arrest records. Dkt. 2713. In an affirmation, Mr. Palma stated that these records had potential to show that the 2009 conviction arose from Morel's role in the BTG, undermining the Guidelines calculation at sentencing. *See* Dkt 2714 at 2–4. That, he stated, would assist in establishing ineffective assistance of counsel and in seeking Amendment 821 relief. *See id.* at 6.

On May 8, 2024, the Court directed the Government to respond. Dkt. 2716.

On July 12, 2024, after an extension, Dkt. 2719, the Government filed a letter opposing Morel's bid for authorization to subpoena NYPD, Dkt. 2736. It noted that § 2255 petitioners are not entitled to discovery as a matter of ordinary course, but must instead show good cause, *id.* at 2–3 (citations omitted), requiring specific allegations demonstrating entitlement to relief, and that a defendant claiming ineffective assistance must establish both prongs of the *Strickland v. Washington*, 466 U.S. 668 (1984), test, *id.* at 3. Morel's bid failed, the Government argued, because he had not filed a § 2255 petition, *id.* at 3–4, and in any event had not established the requisite "good cause" for a habeas petitioner to take discovery, *id.* at 4. The proposed subpoena

4

instead was grounded on speculation and would be a "fishing expedition." *Id.* at 5. Moreover, Morel could not justify the subpoena on the grounds of "newly discovered evidence." *Id.* On the contrary, the Government argued, Morel could have brought the contemplated claim with his earlier § 2255 petition, filed July 21, 2016, which had unsuccessfully challenged his sentence based on *Johnson v. United States*, 576 U.S. 591 (2015). *Id.* at 5 (citing Dkt. 2448). His new § 2255 petition was thus an improper successive petition under § 2255(h). *Id.*

On July 22, 2024, after receiving authorization to do so, Dkt. 2739, Mr. Palma filed a reply, Dkt. 2741. It argued that Morel's 2016 § 2255 petition based on *Johnson* should not be considered a first § 2255 petition, *id.* at 2–4, and that the Court had implicitly found good cause for authorizing Morel to subpoena the NYPD when it expanded the scope of Mr. Palma's appointment, *id.* at 4–5. The same day, Morel, via Mr. Palma, filed a § 2255 petition, claiming that trial counsel was ineffective in not objecting to the PSR's calculation of his criminal history. Dkt. 2742.[1]

## II. Discussion

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Under Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, a § 2255 petitioner is entitled to undertake discovery when the judge "for good cause shown grants leave to do so, but not otherwise." *Id.*; *see also Lewal v. United States*, 152 F.3d 919 (2d Cir. 1998) (unpublished) (same).

---

[1] On July 26, 2024, the Government filed a letter factually correcting Mr. Palma's portrait of an aspect of the briefing process with respect to Morel's July 2016 § 2255 petition based on *Johnson*. Dkt. 2745.

For multiple independent reasons, the Court denies Morel's request for a subpoena to assist in his recently filed § 2255 petition and in seeking Amendment 821 relief, finding Morel not to have established good cause.

First, Morel's stated basis for the subpoenaing the NYPD is speculative. He claims it is possible that the September 2009 robbery for which he was convicted in November 2009 arose from his participation in the BTG. But apart from the fact that he was a member of the gang at the time, he does not identify any fact in support. He does not point to charging documents alleging that the robbery was BTG-related. He does not identify evidence that his coconspirators were BTG affiliates. Strikingly, Morel, an admitted participant in the robbery, does not attest that the robbery was committed by the BTG. In these circumstances, there is no basis to infer that the robbery was part of Morel's offense conduct. *See, e.g., Pizzuti v. United States*, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) ("In order to show good cause, a petitioner must present specific allegations that give the Court 'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief.'" (quoting *Bracy*, 520 U.S. at 908–09)); *Hirschfeld v. Comm'r of the Div. of Parole*, 215 F.R.D. 464, 465 (S.D.N.Y. 2003) (good cause not established "where the petitioner provide[d] no specific evidence that the requested discovery would support his habeas corpus petition"); *Ruine v. Walsh*, No. 00 CIV. 3798 (RWS), 2005 WL 1668855, at *6 (S.D.N.Y. July 14, 2005) (discovery denied where § 2255 petitioner was "seeking documents merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error"(internal quotation marks omitted).

Second, even if the September 2009 robbery had been demonstrably BTG-related, such that Morel's criminal history category had been I, Morel's premise does not logically follow that

6

the Government would have entered into a plea agreement on terms that called for a lower Guidelines range than the one (210–262 months) reflected in the actual plea agreement. On the contrary, at sentencing, the Government recommended a sentence towards the top of the Guidelines range. *See* Sent. Tr. at 17–21. And the Court, stating the obvious, noted that Morel had been "very, very fortunate" that the Government had agreed to the lenient terms it did, with Morel having personally assassinated a rival with a gunshot to the forehead and attempted to murder others. *Id.* at 45. Given Morel's repeated use of firearms to shoot gang rivals and his participation in the BTG's prodigious drug dealing, the Government had various mechanisms available to guard against a lower sentence. These included mandatory minimum and consecutive sentences. *See id.* at 46 (observing that, on the undisputed facts before the Court, "the Perez murder would clearly have qualified as murder in aid of racketeering" and "[h]ad [Morel] been charged with and convicted of that crime, [he] would [have] be[en] facing a mandatory life sentence"). As the docket of this 76-defendant case reflects, the Government used such tools in plea agreements it reached with numerous BTG co-defendants.

Morel's premise thus does not follow, at all, that, had Mr. Oksenhendler demonstrated in plea negotiations that the September 2009 robbery had been BTG-related, his plea agreement would have carried a lower advisory Guidelines range. Based on its supervision of this 76-defendant case, the Court is certain that the Government would instead have adjusted the plea terms to compensate. The Court stands by its real-time assessment at sentencing: Given the dire alternative outcomes his client faced, Mr. Oksenhendler was commendably effective in securing the terms in the plea agreement. *Id.* at 45–46. In notable contrast to the plea agreements of a number of other BTG murderers, Morel's did not carry a mandatory minimum. And its advisory Guidelines range of between 17½ and just under 22 years was, arguably, very lenient given

7

Morel's murder of Perez and attempts to murder others. *See id.* at 47 (noting that the Perez murder "was not an aberration" in Morel's litany of offenses, with the record instead "show[ing] that [he] repeatedly engaged in brutal and unjustified violence").

Third, Morel is mistaken insofar as he assumes that the Court would have imposed a sentence lower than the one imposed had the plea agreement carried a lower advisory Guidelines range. As the Court's extended sentencing remarks reflect, its independent judgment was that a sentence at the top of the range as negotiated (262 months) was minimally necessary to respect the § 3553(a) factors taken as a whole. *See id.* at 43. These § 3553(a) factors, which drove the Court's sentencing determination, included the interests in just punishment and promotion of respect for the law. *Id.* at 47–49. The Court imposed that sentence even after taking into account that Morel had been sentenced to two years' imprisonment on related conduct. In emphatic terms, the Court made clear that it had seriously considered a sentence well above the Guidelines range, and that, while it was respecting the parties' plea agreement, no sentence lower than the one imposed would respect the assembled § 3553(a) factors. *See id.* at 43 (noting the Court's "firm belief that the Section 3553(a) factors do not permit a sentence below . . . the sentence [imposed]"); *accord. id.* (explaining that [t]he Section 3553(a) factors here all mostly point to a very, very high sentence," arguably one "above that range"). The information Morel's proposed subpoena hopes to find—records reflecting that the September 2009 robbery was gang-related—would not have affected the Court's assessment of the § 3553(a) factors at sentencing because it is not mitigating. Nor would that information affect the Court's assessment of the just sentence on an application for Amendment 821 relief.

Fourth and finally, as the Government notes, the § 2255 petition in support of which Morel seeks discovery is his second, and he has not provided a basis for the Court to conclude it

8

falls within the "stringent limits" imposed by § 2255 "on a prisoner's ability to bring a second or successive application for a writ of habeas corpus," *Adams v. United States*, 155 F.3d 582, 583 (2d Cir. 1998). To file such second or successive application, a § 2255 petitioner must receive authorization from the appropriate court of appeals. 28 U.S.C. § 2255(h). Authorization is granted only if the petitioner makes a *prima facie* showing that his application contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

*Id.*; *see Mata v. United States*, 969 F.3d 91, 93 (2d Cir. 2020) (per curiam).

Morel does not suggest that his claim of ineffective assistance of counsel is based on a new rule of constitutional law that qualifies for relief under § 2255(h)(2). *See* Dkts. 2713–14, 2742. To the extent he argues that it is based on newly discovered evidence, *see* Dkt. 2714 at 3–6, 8, "Section 2255(h)(1) . . . obliges a defendant to identify what the new evidence is and to show 'that he could not have discovered this information through the exercise of due diligence prior to the filing of his first § 2255 motion.'" *Mata*, 969 F.3d at 94 (quoting *Herrera-Gomez v. United States*, 755 F.3d 142, 148 (2d Cir. 2014) (per curiam)).

That standard is not met here. The records Morel seeks are historical police records about an arrest and conviction which occurred 15 years ago and predated the charges in this case. And Morel himself, shortly after his sentencing, mounted a similar challenge with respect to a different prior conviction. In a letter to the Court, he argued that because a different prior conviction, his 2012 assault, was BTG-related, the Court should have applied his time served in that earlier case to the 262-month sentence it imposed, rather than treating an additional 262 months as the just sentence. *See* Dkt. 1409. Morel does not articulate any coherent basis on

9

which he could not have made the present argument long ago, including at the time he first moved for sentencing relief under § 2255.

## CONCLUSION

For the reasons above, the Court denies Morel's application for authority to subpoena the NYPD. The Clerk of Court is respectfully directed to terminate the motion at docket 2713.

The Court will now turn to Morel's applications for substantive relief: under § 2255 and Amendment 821. Any submission by Morel in support of these applications is due by August 30, 2024. The Government is to respond by September 13, 2024. The Court does not authorize a reply. The Court expects that the parties, in their submissions, will take into account the implications for these application(s) of the Court's analysis herein.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: August 16, 2024
      New York, New York