UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

LENIN MOREL,

Defendant.

---

11 Cr. 1032-54 (PAE)

OPINION &
ORDER

PAUL A. ENGELMAYER, District Judge:

This order resolves a counseled motion for a reduction of sentence by defendant Lenin

Morel pursuant to 18 U.S.C. § 3582(c)(1), the compassionate release statute, and to 18 U.S.C.

§ 3582(c)(2), in light of Amendment 821 to the Sentencing Guidelines, which went into effect on

November 1, 2023 and applies retroactively. For the reasons that follow, the Court denies the

motion.

## I.    Relevant Background

### A.  Offense Conduct, Plea, and Sentencing

The background to this case is set out in detail in, *inter alia*, the presentence report,

Dkt. 2689 ("PSR"), the transcript of Morel's sentencing, Dkt. 1572 ("Sent. Tr."), and the

Government's memorandum, Dkt. 2736.

In brief, Morel was a member of the Bronx Trinitarios Gang (the "BTG"). Between in or

about 2003 and in or about December 2011, the BTG committed numerous murders and other

acts of violence, engaged in firearms and drug trafficking, and terrorized the northwest Bronx.

*See, e.g.*, Sent. Tr. at 44–46. On May 13, 2014, Morel pled guilty to Count One of Indictment

S5 11 Cr. 1032 (PAE), charging him with participating in a racketeering enterprise, in violation

of 18 U.S.C. § 1962(c). The conduct underlying that charge included participating with the BTG in various violent activities. *See* Sent. Tr. at 3. These included personally committing a murder (by shooting BTG rival Miguel Perez in the head), shooting and attempting to murder members of rival gangs, and narcotics trafficking. *See id.* at 3, 18.

Sentencing was held November 14, 2014. The Court, in agreement with the parties, accepted the PSR's Guidelines calculation, finding an offense level of 36, a criminal history category of II, and an advisory Guidelines range of between 210 and 262 months' imprisonment. *Id.* at 15. The Court imposed a sentence at the top of the Guidelines range. *Id.* at 47, 56.

Explaining the sentence, the Court noted that Morel had engaged in "an extraordinary amount of brutal and senseless violence"; that he had been undeterred by prior arrests and guilty pleas arising from violent conduct; and that he was "very, very fortunate to have struck the plea agreement that [he] did," because the Perez murder alone would have qualified as a murder in aid of racketeering, carrying a mandatory life sentence. *Id* at 44–46; *see also id.* at 46 (commending counsel for reaching a plea agreement that gave the Court discretion as to zero to life imprisonment). The Court emphatically rejected the defense's request for a below-Guidelines sentence. It explained that the 18 U.S.C. § 3553(a) factors pointed towards a "very, very high sentence" and arguably justified an above-Guidelines sentence. *Id.* at 47. As to the § 3553(a) factors of just punishment and promotion of respect for the law, Morel had taken Perez's life purely because he viewed Perez as a rival of the BTG and two other times had shot other rivals of the gang, one in the back and one in the leg. *Id.* at 47–49. Morel also sold cocaine for the gang. *Id.* at 47–48. A very high sentence also was necessary to achieve specific (and general) deterrence and to protect the public. *Id.* at 50–52. As to mitigating factors, the Court credited Morel with accepting responsibility, as reflected in his guilty plea; noted Morel's

youth; recognized challenges Morel had faced growing up; and noted letters from family positively describing his character. *Id.* at 52–55. Without these mitigating factors, the Court stated, it would have imposed a sentence above, and "likely well above," the Guidelines range. *Id.* at 52.

After sentencing, the Court received a letter from Morel, asking the Court to credit, as against the sentence imposed, a term of imprisonment Morel had served in New York State custody following a 2012 conviction for assault, for which he was sentenced to two years' imprisonment. Dkt. 1409 (attaching letter). In an order filed December 1, 2014, the Court denied the request. *Id.* It noted that defense counsel had made the same request at sentencing, and that the Court had denied it, as it had factored that time served in determining the appropriate sentence under § 3553(a). *Id.* The Court reiterated why a sentence of 262 months, independent of the time Morel had served on the assault offense, was necessary. *Id.*

### B. Morel's Petition Under 28 U.S.C. § 2255 and Request for a Subpoena

On December 19, 2023, the Probation Office issued a supplemental PSR. It found Morel eligible to pursue a reduction of sentence under Sentencing Guidelines Amendment 821. Dkt. 2689 at 3. It explained that Morel had received a 2-point criminal history enhancement for committing his offense while under a criminal justice sentence; eliminating those "status points" pursuant to Amendment 821 would leave Morel with one criminal history point and in Criminal History Category I, with an advisory guidelines range of 188 to 235 months' imprisonment. *Id.* at 3–4, 33.

On February 28, 2024, apprised of the untimely death of trial counsel Guy Oksenhendler, Esq., the Court appointed Richard Palma, Esq., to represent Morel in seeking a sentence reduction under Amendment 821. Dkt. 2701.

On April 5, 2024, Mr. Palma filed a letter saying he had concluded that Mr. Oksenhendler likely rendered ineffective assistance to Morel in acceding to the Probation Office's assessment of criminal history points for a September 12, 2009 robbery offense in which Morel, with two co-conspirators, punched another person in the head. Dkt. 2710 at 3. Noting that Morel was a member of the BTG at the time, Mr. Palma asserted that the incident was likely BTG-related, and if so, would qualify as relevant conduct, and be subsumed in the offense of conviction, racketeering, eliminating one criminal history point. *Id.* at 3–4. The 2009 conviction, Mr. Palma noted, was also the basis for imposing the status point adjustment implicated by Amendment 821. *Id.* at 5–6. Mr. Palma also argued that a § 2255 petition claiming ineffective assistance of counsel was not precluded by Morel's plea agreement, *id.* at 6–7, and that the Court should find the one-year limitations period for § 2255 relief equitably tolled, *id.* at 8–9.

On May 7, 2024, Mr. Palma moved for an order, under Federal Rule of Criminal Procedure 17(c) or the Court's inherent authority, authorizing Morel to subpoena the New York Police Department ("NYPD") for Morel's arrest records. Dkt. 2713. In an affirmation, Mr. Palma stated that these records had potential to show that the 2009 conviction arose from Morel's role in the BTG, undermining the Guidelines calculation at sentencing. *See* Dkt. 2714 at 2–4. That, he stated, would assist in establishing ineffective assistance of counsel and in seeking Amendment 821 relief. *See id.* at 6. On May 8, 2024, the Court directed the Government to respond. Dkt. 2716.

On July 12, 2024, after an extension, Dkt. 2719, the Government filed a letter opposing Morel's bid for authorization to subpoena NYPD, Dkt. 2736. It noted that § 2255 petitioners are not entitled to discovery as a matter of ordinary course, but must instead show good cause, *id.* at 2–3 (citations omitted), requiring specific allegations demonstrating entitlement to relief, and

4

that a defendant claiming ineffective assistance must establish both prongs of the *Strickland v. Washington*, 466 U.S. 668 (1984), test, *id.* at 3. Morel's bid failed, the Government argued, because he had not filed a § 2255 petition, *id.* at 3–4, and in any event had not established the requisite "good cause" for a habeas petitioner to take discovery, *id.* at 4. The proposed subpoena instead was grounded on speculation and would be a "fishing expedition." *Id.* at 5. Moreover, Morel could not justify the subpoena on the grounds of "newly discovered evidence." *Id.* On the contrary, the Government argued, Morel could have brought the contemplated claim with his earlier § 2255 petition, filed July 21, 2016, which had unsuccessfully challenged his sentence based on *Johnson v. United States*, 576 U.S. 591 (2015). *Id.* at 5 (citing Dkt. 2448). His new § 2255 petition was thus an improper successive petition under § 2255(h). *Id.*

On July 22, 2024, after receiving authorization to do so, Dkt. 2739, Mr. Palma filed a reply, Dkt. 2741. It argued that Morel's 2016 § 2255 petition based on *Johnson* should not be considered a first § 2255 petition, *id.* at 2–4, and that the Court had implicitly found good cause for authorizing Morel to subpoena the NYPD when it expanded the scope of Mr. Palma's appointment, *id.* at 4–5. The same day, Morel, via Mr. Palma, filed a § 2255 petition, claiming that trial counsel was ineffective in not objecting to the PSR's calculation of his criminal history. Dkt. 2742.[1]

On August 16, 2024, the Court issued an order denying Morel's application for a subpoena, for multiple reasons. Dkt. 2751 ("Subpoena Order"). First, Morel's stated basis for subpoenaing the NYPD—that its records would show that his 2009 robbery was BTG-related— was speculative. *Id.* at 6. Second, even had the robbery been BTG-related so as to make Morel's

_____

[1] On July 26, 2024, the Government filed a letter factually correcting Mr. Palma's portrait of an aspect of the briefing process with respect to Morel's July 2016 § 2255 petition based on *Johnson*. Dkt. 2745.

criminal history category I, it did not follow that the Government would have entered into a plea agreement on terms calling for a lower Guidelines range than the one (210–262 months) reflected in the actual agreement. On the contrary, at sentencing, the Government had recommended a sentence towards the top of that range. And, based on its supervision of the 76-defendant case, the Court stated, it was certain that the Government, including via mechanisms such as mandatory minimum and consecutive sentences, would have taken steps to guard against a lower sentence. *Id.* at 6–8. Morel had been fortunate that the Government had agreed to the lenient terms of the plea agreement, given that he had personally assassinated a rival with a gunshot to the forehead and had attempted to murder others. *Id.* at 7. Third, Morel's premise was wrong that the Court would have imposed a lower sentence than the one imposed had the plea agreement carried a lower Guidelines range. Rather, as the Court's sentencing remarks reflected, the Court's independent judgment was that a sentence at the top of the range as negotiated (262 months) was necessary to respect the § 3553(a) factors as a whole. *Id.* at 8 (summarizing relevant factors). Finally, the § 2255 petition in support of which Morel sought discovery was his second, and it did not appear to meet the stringent requirements for a successive such petition. *Id.* at 8–10.

On August 29, 2024, following the decision declining to authorize the subpoena, Morel, through counsel, moved to dismiss the pending § 2255 motion. Dkt. 2755. On August 30, 2024, the Court granted that motion. Dkt. 2757.

### C. Morel's Pending Motion for a Reduction of Sentence

On September 7, 2024, Morel, through counsel, moved for a reduction of sentence. He moved under 18 U.S.C. § 3582(c), and based on Amendment 821 to the Sentencing Guidelines. Dkt. 2759. The same day, Morel's counsel filed a personal statement from Morel, and proof of

various Bureau of Prisons ("BOP") programs in which he had participated while in custody. Dkt. 2760.  On October 15, 2024, the Government submitted an opposition.  Dkt. 2768.

## II.    Applicable Legal Standards

### A. Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release.  *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *see also, e.g.*, *United States v. Clarke*, No. 09 Cr. 705, 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf.  *See United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021).  However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant."  *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been

promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a

"motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and

not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236;

accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts'

discretion to consider whether any reasons [were] extraordinary and compelling" in such cases,

*id.*; *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated

version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through

November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the

BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary

and compelling reasons and could "consider the full slate of extraordinary and compelling

reasons that an imprisoned person might bring before [it] in motions for compassionate release."

*Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the

Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n,

Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The

amended guidance from the Commission as to what constitutes extraordinary and compelling

reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, alone or in

combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* U.S.S.G. § 1B1.13(b)(1). In addition to
previously recognized circumstances such as a defendant suffering from a terminal
illness or a serious medical condition, *id.* §§ 1B1.13(b)(1)(A)–(B), the amended
guidelines direct courts to consider whether the defendant is "suffering from a medical
condition that requires long-term or specialized medical care" that is not being provided
in prison and without which the defendant is at risk of serious health deterioration or
death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of
being affected by an outbreak of infectious disease or other "ongoing public health

emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (Nov. 1, 2023).

- *Age of the defendant.* Coupled with a deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support a sentence reduction. U.S.S.G. § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *See id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above, such may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up).

- *Unusually long sentence plus changes in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

**B.     Amendment 821**

A federal court "may not generally modify a term of imprisonment once it has been imposed." *United States v. Zapatero*, 961 F.3d 123, 127 (2d Cir. 2020) (quoting 18 U.S.C. § 3582(b)–(c)). Section 3582(c)(2), however, provides an exception to that rule:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2); *see also United States v. Brooks*, 891 F.3d 432, 435–36 (2d Cir. 2018); *United States v. Savoy*, 567 F.3d 71, 72 (2d Cir. 2009) (per curiam); *United States v. Young*, 998 F.3d 43, 46 n.1 (2d Cir. 2021).

The Supreme Court has explained that proceedings on a § 3582(c)(2) motion follow a "two-step approach." *Dillon v. United States*, 560 U.S. 817, 827 (2010); *see United States v. Mock*, 612 F.3d 133, 136–37 (2d Cir. 2010) (per curiam). First, the Court "follow[s] the Commission's instructions in § 1B1.10 [of the Guidelines] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 560 U.S. at 827. Second, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.*

In 2023, the Sentencing Commission amended the Sentencing Guidelines, with retroactive effect. *See* 88 Fed. Reg. 28254, 28271 (May 3, 2023) (amendment); 88 Fed. Reg. 60,534, 60,535 (Sept. 1, 2023) (retroactivity). The amendment, Amendment 821, can serve as a basis for sentence reduction under § 3582(c)(2). U.S.S.G. § 1B1.10(a), (d). Relevant here, Part A of Amendment 821 eliminates up to two "status points"—used to calculate a defendant's criminal history category—if the defendant, at the time of sentencing, was assigned status points for committing an offense while under any criminal justice sentence, including supervision such as probation and parole. 88 Fed. Reg. 28,254, 28,271; U.S.S.G. § 4A1.1; *see, e.g., United States v. Ewing*, No. S6 14 Cr. 604-1, 2024 WL 1250685 (S.D.N.Y. Mar. 21, 2024) (defendant did not qualify for sentence reduction under Part A of Amendment 821 because he had not been assigned any status points when originally sentenced).

As applied to sentencing proceedings, Amendment 821 took effect on November 1, 2023. U.S.S.G. § 1B1.10. As to previously sentenced defendants, the Amendment made retroactive relief available as of February 1, 2024. *Id.* cmt. n.7. However, a defendant is eligible for resentencing only if the Guidelines range as recalculated to take into account Amendment 821 includes sentences below that originally imposed, *id.* § 1B1.10(a)(2)(B), and the Court generally may not impose a sentence below the bottom of the Guidelines range as presently calculated, *id.* § 1B1.10(b)(2)(A). As with § 3582(c)(1), the Court may impose a lower sentence only if such is consistent with the § 3553(a) factors. 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10 cmt. n.1(B).

## III.    Discussion

The Court finds that Morel is eligible for a status point recalculation under Amendment 821, as the United States Probation Office has concluded in a supplemental presentence report. *See* Dkt. 2689 (filed December 19, 2023). The Probation Office has explained that Morel, at

sentencing, received two criminal history category points under U.S.S.G. § 4A1.1(d) for having

committed the instant offense while under a criminal justice sentence, placing him in criminal

history category II. Dkt. 2689 at 17, 33–34. Because he had fewer than seven criminal history

points, that status point enhancement would not apply, and Morel's criminal history category

would be I under Amendment 821. *Id.* at 3–4. His advisory Guidelines range today, given his

total offense level of 36, would be 188–235 months' imprisonment, below the range (210–262

months' imprisonment) that the Court found in imposing the sentence of 262 months'

imprisonment. *See id.*

The Court, however, does not find Morel to merit a sentence reduction under 18 U.S.C.

§ 3582(c)(1) or (c)(2). His bid for relief under § 3582(c)(1) is easily set aside because he does

not make arguments that fit under, let alone satisfy, any of the bases that that U.S.S.G.

§ 1B1.13(b) sets out as extraordinary and compelling reasons for a sentence reduction. *See* Dkt.

2759 at 7, 13. Indeed, in citing § 3582(c)(1), at times, Morel appears not to pursue a separate

argument under that provision, but instead to proceed on the mistaken premise that Amendment

821 is a basis for § 3582(c)(1) relief. *See generally id.*

The Court construes his motion as seeking a sentence reduction principally under

§ 3582(c)(2) in light of Amendment 821. *See* Dkt. 2759 at 2. As noted, § 3582(c)(2) authorizes

courts to reduce sentences that were "based on" a Guidelines range that the Sentencing

Commission subsequently lowered "after considering" the § 3553(a) factors and "if such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission."

18 U.S.C. § 3582(c)(2). The Court, however, denies relief under § 3582(c)(2) because it does not

find the § 3553(a) factors to support a reduction of sentence. *Id.*; *see also* U.S.S.G. § 1B1.10

app. note 1(B)(i); *Dillon*, 560 U.S. at 827; *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013)

("A retroactive amendment to the Guidelines 'merely authorizes a reduction in sentence; it does not require one.'" (quoting *United States v. Rivera*, 662 F.3d 166, 170 (2d Cir. 2011))). The Court's assessment of the § 3553(a) factors would likewise preclude relief under § 3582(c)(1), even had Morel made the threshold showing necessary for eligibility. 18 U.S.C. § 3582(c)(1). That is so for the following reasons.

First, in imposing a 262-month sentence, the Court did not place weight on the fact that Morel had committed his federal offenses while on supervision. As the transcript of sentencing reflects, the sentence was driven instead by Morel's extraordinarily serious offense conduct, which consisted of having personally assassinated a gang rival, Perez, with a gunshot to the forehead and attempted to murder others. *See, e.g.*, Sent. Tr. at 45; *id*. at 47 (noting that Perez murder "was not an aberration" in Morel's litany of offenses, with the record instead "show[ing] that [he] repeatedly engaged in brutal and unjustified violence"). That conduct, the Court assessed, made the sentence imposed necessary, including to achieve just punishment, promote respect for the law, and protect the public against violent recidivism. *See, e.g., id*. at 43, 45, 47–49. The Sentencing Commission's revised assessment of the circumstances in which a defendant's having committed a crime while on supervised release bears on the likelihood of recidivism thus does not undermine any premise on which the Court determined the appropriate sentence.

Second, the 2023 amendment to the Guidelines does not mean that Morel's Guidelines range, if sentenced today, would have been lower than it was at the time of his sentence. As the Court has explained, in rejecting Morel's bid for discovery, it cannot be assumed that the Government would have entered into a plea agreement adopting a lower Guidelines calculation:

> Morel's premise does not logically follow that the Government would have entered
> into a plea agreement on terms that called for a lower Guidelines range than the one

13

(210–262 months) reflected in the actual plea agreement. On the contrary, at sentencing, the Government recommended a sentence towards the top of the Guideline range. *See* Sent. Tr. at 17–21. And the Court, stating the obvious, noted that Morel had been "very, very fortunate" that the Government had agreed to the lenient terms it did, with Morel having personally assassinated a rival with a gunshot to the forehead and attempted to murder others. *Id.* at 45. Given Morel's repeated use of firearms to shoot gang rivals and his participation in the BTG's prodigious drug dealing, the Government had various mechanisms available to guard against a lower sentence. These included mandatory minimum and consecutive sentences. *See id.* at 46 (observing that, on the undisputed facts before the Court, "the Perez murder would clearly have qualified as murder in aid of racketeering" and "[h]ad [Morel] been charged with and convicted of that crime, [he] would [have] be[en] facing a mandatory life sentence"). As the docket of this 76-defendant case reflects, the Government used such tools in plea agreements it reached with numerous BTG co-defendants.

Morel's premise thus does not follow, at all, that, had Mr. Oksenhendler demonstrated in plea negotiations that the September 2009 robbery had been BTG-related, his plea agreement would have carried a lower advisory Guidelines range. Based on its supervision of this 76-defendant case, the Court is certain that the Government would instead have adjusted the plea terms to compensate. The Court stands by its real-time assessment at sentencing: Given the dire alternative outcomes his client faced, Mr. Oksenhendler was commendably effective in securing the terms in the plea agreement. *Id.* at 45–46. In notable contrast to the plea agreements of a number of other BTG murderers, Morel's did not carry a mandatory minimum. And its advisory Guidelines range of between 17½ and just under 22 years was, arguably, very lenient given Morel's murder of Perez and attempts to murder others.

Dkt. 2751 at 6–8. To the limited extent that the Guidelines range influenced the sentence imposed, it is thus not reasonable to assume that any different Guidelines range would have applied at the time of sentencing.

Third, to the extent the parties' submissions report new information, it is insufficient to disturb the Court's assessment of the proper sentence. The Court's judgment that a sentence of 262 months' imprisonment was minimally necessary to respect the § 3553(a) factors was based on weighty considerations, predominantly the Perez murder. *See* Sent. Tr. at 43–49; *see also id.* at 43 (noting the Court's "firm belief that the Section 3553(a) factors do not permit a sentence below . . . the sentence [imposed]"); *accord. id.* (explaining that [t]he Section 3553(a) factors

here all mostly point to a very, very high sentence," arguably one "above that range"). Morel notes that that he has taken numerous courses during his years in prison and that, particularly during COVID-19 pandemic, conditions of confinement have proven more onerous than anticipated. Dkt. 2759 at 7; Dkt. 2760.[2] But, as chronicled by the Probation Office, Morel's time in custody has also been marked by an alarming disciplinary history, including four violations for possessing a dangerous weapon, 10 violations for fighting, and six violations for assault. *See* Dkt. 2689 at 5–8. Those incidents undermine Morel's claim to rehabilitation and offset the mitigating factors he cites.

Factoring in all information, historical and current, the Court's judgment remains that the § 3553(a) factors demand the sentence imposed. The shortened sentence that Morel seeks today would disserve these factors, and not respect the seriousness of Morel's offenses. *See* 18 U.S.C. § 3582(c)(2) (sentence reduction must be consistent with 3553(a) factors); *United States v. Del Rosario*, No. 12 Cr. 81 (PAE), 2020 WL 4505841, at *3 (S.D.N.Y. Aug. 4, 2020) (denying § 3582(c)(2) relief based on balancing of § 3553(a) factors); 18 U.S.C. § 3582(c)(1)(A) (release permissible only if compatible with § 3553(a) factors); *see also, e.g.*, *United States v. Butler*, No. 18 Cr. 834-10 (PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (denying compassionate release motion where § 3553(a) factors, considered "in totality," disfavored early release); *United States v. Monsanto Lopez*, No. 16 Cr. 643-1, 2020 WL 2555305, at *1 (S.D.N.Y. May 20, 2020) (even if defendant could show extraordinary and compelling circumstances, § 3553(a) factors required denial); *United States v. Garcia*, No. 16 Cr. 719-2, 2020 WL 2539078,

---

[2] Morel also notes his youth at the time of his offenses, *see* Dkt. 2759 at 3–4, but the Court considered that factor at sentencing, and treated it as mitigating, *see* Sent. Tr. at 53–54.

at *2 (S.D.N.Y. May 19, 2020) (same); *United States v. Reese*, No. 12 Cr. 629 (VM), 2020 WL 2554381, at *2 (S.D.N.Y. May 20, 2020) (same).

## CONCLUSION

For the reasons above, the Court denies Morel's application for a reduction of sentence. The Clerk of Court is respectfully requested to terminate the motion pending at Docket 2759.


SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: November 12, 2024
        New York, New York